NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 27 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| OSCAR MAGANA, AKA Oscar Magana Jimenez, AKA Oscar Rubio Magana Jimenez, <br><br> Petitioner, <br><br> v. <br><br> JAMES R. MCHENRY III, Acting Attorney General, <br><br> Respondent. | No. 17-72538 <br><br> Agency No. A205-711-775 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted January 22, 2025[**]
San Francisco, California

Before: LEE and H.A. THOMAS, Circuit Judges, and BENNETT,[***] District
Judge.

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable Richard D. Bennett, United States District Judge for the District of Maryland, sitting by designation.

Petitioner Oscar Magana, a native and citizen of Mexico, seeks review of a decision from the Board of Immigration Appeals (BIA) affirming the Immigration Judge's (IJ) denial of his application for deferral of removal under the Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

We review for "substantial evidence" the factual findings underlying the Agency's determination that an applicant is not eligible for protection under CAT. *See Lalayan v. Garland*, 4 F.4th 822, 840 (9th Cir. 2021). Under this standard, we must accept the Agency's findings of fact "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Dawson v. Garland*, 998 F.3d 876, 882 (9th Cir. 2021). "We review questions of law regarding CAT claims de novo." *Park v. Garland*, 72 F.4th 965, 978 (9th Cir. 2023) (citing *Velasquez-Samayoa v. Garland*, 49 F.4th 1149, 1154 (9th Cir. 2022)).

Here, substantial evidence supports the Agency's finding that Magana failed to meet his burden of establishing eligibility for protection under CAT. "To receive CAT protection, a petitioner must prove that it is 'more likely than not' that he or she would be tortured if removed." *Shrestha v. Holder*, 590 F.3d 1034, 1048 (9th Cir. 2010) (quoting 8 C.F.R. § 1208.16(c)(2)). "In addition, the petitioner must demonstrate that he would be subject to a *particularized threat* of torture, and that such torture would be inflicted by or at the instigation of or with the consent or

2

acquiescence of a public official or other person acting in an official capacity." *Dhital v. Mukasey*, 532 F.3d 1044, 1051 (9th Cir. 2008) (citations and internal quotation marks omitted). The "consent or acquiescence" requirement of CAT requires that the government of the country of deportation be "aware of the alleged torture" and either "willfully blind to it or unwilling to oppose it." *Kaur v. Garland*, 2 F.4th 823, 837 (9th Cir. 2021) (cleaned up). "[A] general ineffectiveness on the government's part to investigate and prevent crime will not suffice to show acquiescence." *Andrade-Garcia v. Lynch*, 828 F.3d 829, 836 (9th Cir. 2016).

Magana fears that if he is removed to Mexico, he will be killed "out of revenge" by those who killed his father. Magana explained that in 2006 or 2007, two unknown individuals shot and killed his father at his place of business in Tijuana, Mexico. Although Magana does not know for certain why his father was murdered, he believes it was because of "the illegal things" his father was doing and "problems with dangerous cartels."

But Magana failed to provide any evidence to suggest that the unknown individuals who killed his father would want to kill him too. Magana entered the United States in 2000, when he was ten years old, and has not returned to Mexico since. It was not until 2006 or 2007, though, that Magana's father was murdered at his place of business in Mexico. Furthermore, none of Magana's family who remained in Mexico—including four or five siblings and two uncles—have

experienced any harm since Magana's father was murdered. *See Santos-Lemus v. Mukasey*, 542 F.3d 738, 748 (9th Cir. 2008) (concluding that applicant's CAT claim was undermined in part by mother's ability to remain unharmed in applicant's country of origin), *abrogated on other grounds by Henriquez-Rivas v. Holder*, 707 F.3d 1081 (9th Cir. 2013).

Magana also testified that while living in Mexico with his father, unknown individuals shot at his house while he was in it, and that his friend's brother was abducted and killed. Again, though, there is no evidence that the individuals responsible for these crimes ever wanted to harm Magana or would want to harm him in the future. Thus, substantial evidence supports the Agency's finding that Magana failed to show that he faces a particularized risk of future torture. *See Dhital*, 532 F.3d at 1051.

Finally, nothing in the record compels a finding that the Mexican government would "consent" or "acquiesce" in Magana's torture. Although Mexican authorities have not arrested anyone for the murder of Magana's father, this alone is not sufficient to show "acquiescence." *See Andrade-Garcia*, 828 F.3d at 836 ("The inability to bring the criminals to justice is not evidence of acquiescence, as defined by the applicable regulations.").

**PETITION DENIED.**